# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **DEFENDERS OF WILDLIFE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 10-0254-WS-C** |
| | ) | |
| **MINERALS MANAGEMENT** | ) | |
| **SERVICE,** *et al.*, | ) | |
| | ) | |
| **Defendants,** | ) | |
| | ) | |
| **AMERICAN PETROLEUM INSTITUTE,** | ) | |
| *et al.*, | ) | |
| | ) | |
| **Defendant-Intervenors.** | ) | |

## ORDER

This matter comes before the Court on the Joint Motion for Stay of Litigation (doc. 38) filed by plaintiff, Defenders of Wildlife, and defendants Minerals Management Service, United States Department of the Interior, and Ken Salazar, Secretary of Interior (collectively, the "Federal Defendants"). This Joint Motion is opposed by the defendant-intervenors, American Petroleum Institute, Independent Petroleum Association of America, US Oil & Gas Association, and International Association of Drilling Contractors (the "Associations"). The Motion has been briefed and is now ripe.

## I.    Relevant Background.

Defenders of Wildlife brought this action against the Federal Defendants to challenge their practice of granting "categorical exclusions" from National Environmental Policy Act ("NEPA") review to exploratory drilling operations for oil and gas leases in the Gulf of Mexico. In its 35-page Second Amended Complaint (doc. 33), Defenders of Wildlife alleges that the Minerals Management Service acted arbitrarily and capriciously and in violation of law (including the Administrative Procedure Act and the Endangered Species Act) in the following respects: (i) granting categorical exclusions from NEPA analysis for exploration wells and

drilling operations in the Gulf of Mexico following the April 2010 Deepwater Horizon explosion; (ii) in its manual, adopting categorical exclusions that go well beyond those authorized by applicable regulations; (iii) failing to prepare a supplemental environmental impact statement for ongoing and proposed new lease sales in the Gulf of Mexico post-Deepwater Horizon; (iv) accepting bids for new leases after the Deepwater Horizon spill in reliance on previous environmental conclusions that have been proven invalid and without supplementation of the environmental impact statements based on new circumstances and information; (v) failing to reinitiate consultation with the National Marine Fisheries Service and the U.S. Fish and Wildlife Service as to lease sales in the Gulf of Mexico after the Deepwater Horizon spill; and (vi) failing to ensure that there will be no jeopardy to endangered or threatened species resulting from lease sales in the Gulf following the Deepwater Horizon incident.

On August 9, 2010, the undersigned entered an Order (doc. 31) granting the Associations leave to intervene in this action as defendants pursuant to Rule 24, Fed.R.Civ.P. A week later, the Associations filed an extensive Motion to Dismiss (doc. 36) raising numerous legal defenses to the Second Amended Complaint. The Associations' Motion to Dismiss includes, *inter alia*, arguments that venue is improper (on the theory that a substantial part of the events or omissions giving rise to plaintiff's claims did not occur in this judicial district) and that subject matter jurisdiction is lacking (on theories that exclusive jurisdiction resides in the court of appeals adjacent to the proposed drilling operations, that certain claims are time-barred, that other claims are not ripe, and so on).

In their Joint Motion for Stay filed on August 18, 2010, Defenders of Wildlife and the Federal Defendants assert that they have initiated settlement discussions, that they have scheduled a settlement meeting for September 8, 2010, and that the resources of both litigants and the Court would be preserved if this action were stayed through mid-October 2010 to facilitate those negotiations and ascertain whether they may result in narrowing or resolution of issues joined in the Second Amended Complaint. The Associations oppose the Motion.

## II.     Analysis.

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997); *see also Ortega Trujillo v. Conover & Co. Communications, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000) ("A stay sometimes is authorized simply as a means of controlling the district

court's docket and of managing cases before the district court."); *Dominguez v. Hartford Financial Services Group, Inc.*, 530 F. Supp.2d 902, 905 (S.D. Tex. 2008) ("The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation ...."); *Utah v. Eli Lilly and Co.*, 509 F. Supp.2d 1016, 1019 (D. Utah 2007) (recognizing discretion to stay proceedings to save time and effort for parties and court). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Thus, in determining whether a stay is appropriate in a particular case, "the court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side." *Feld Entertainment, Inc. v. A.S.P.C.A.*, 523 F. Supp.2d 1, 3 (D.D.C. 2007) (citations omitted). In exercising this discretion, district courts have considered such factors as: "(1) whether the litigation is at an early stage ...; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and on the court." *Grice Engineering, Inc. v. JG Innovations, Inc.*, 691 F. Supp.2d 915, 920 (W.D. Wis. 2010).[1]

The advantages of a stay, in terms of conservation of judicial and litigant resources, are substantial and obvious in this case. Judging by the pleadings and other filings to date, this litigation promises to be complex, hard-fought, and time-consuming. Now, near the inception of the case, before the Federal Defendants have filed a responsive pleading, before discovery has commenced, and before a trial date has been set, Defenders of Wildlife and the Federal Defendants are requesting a finite, 60-day window to explore whether conciliation of all or part of their dispute is achievable. There is no reason to believe that this request is a delay tactic, is imposed for an improper purpose, or is the product of anything other than good faith. Indeed, there is substantial optimism that these negotiations may be fruitful in identifying common

---

[1]     *See also Teleconference Systems v. Proctor & Gamble Pharmaceuticals, Inc.*, 676 F. Supp.2d 321, 326 (D. Del. 2009); *Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361 (C.D. Cal. 2009); *Tomco Equipment Co. v. Southeastern Agri-Systems, Inc.*, 542 F. Supp.2d 1303, 1307 (N.D. Ga. 2008).

ground, given very recent administrative developments in which the Federal Defendants have apparently announced their intention to curtail use of categorical exclusions for certain deepwater drilling activities. (*See* doc. 41, at 2.) Thus, a stay is likely to simplify the issues in question, streamline the issues for trial, and reduce the burdens of litigation on Court and parties alike. In short, the Court agrees with movants that there are considerable benefits to entering a temporary stay at this time to enable the parties to focus their efforts on reaching an amicable resolution without being distracted by the press of litigation as this action spins up to "full speed ahead" status. This type of circumstance may be a compelling reason for a stay. *See, e.g., Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008) ("district courts have inherent, discretionary authority to issue stays in many circumstances, and granting a stay to permit mediation (or to require it) will often be appropriate").

Nonetheless, the Associations (who were authorized to intervene in this action a mere three weeks ago) oppose the proposed stay. According to the Associations, a stay "will result in significant prejudice by extending the cloud over the contract and property rights of the Associations' members" and will "simply lengthen[] the cloud of uncertainty over the Association members' rights." (Doc. 39, at 3-4.) The Associations elaborate that their members have established contract and property rights in purchased leases whose validity Defenders of Wildlife is challenging, and that delaying review of the Motion to Dismiss would needlessly "tie up valuable judicial resources." (*Id.* at 6.)

Upon careful review, the Court finds that the Associations have failed to demonstrate even a fair possibility that they will suffer prejudice or harm during the course of a modest, finite stay. For all their references to a "cloud of uncertainty" over their members' contract and property rights, the Associations provide no concrete examples of how such a "cloud" is harming them, impairing their rights, or impeding their conduct. The Associations are not laboring under any temporary or preliminary injunctive relief granted by this Court. They have not explained how their members are constrained in any way by the mere existence of this lawsuit. Moreover, the Motion to Dismiss that the Associations so ardently urge this Court to rule on without delay may extend, rather than dissipate, any such "cloud of uncertainty." Recall that the principal grounds for that Motion to Dismiss include arguments that Defenders of Wildlife brought this lawsuit before the wrong court and raised claims that are not yet ripe. If the Associations' Motion to Dismiss is successful on these theories, a ruling in the Associations' favor on that

Motion will not dispel the cloud, but will simply cause it to waft to another forum to gather anew and/or leave the cloud looming just beyond the horizon until the Defenders of Wildlife's claims ripen. In short, the Associations have failed to demonstrate any reasonable likelihood that they will suffer harm or prejudice in any way by the granting of the requested stay to enable the parties to explore settlement possibilities.

Two other points bear mentioning. First, far from harming the Associations, it appears that a temporary stay would benefit them by potentially obviating the need for them to litigate certain causes of action asserted by the Defenders of Wildlife. A narrowing of the issues would reduce litigation burdens for <u>everyone</u> in this case, the Associations included. Second, although the Associations balk that "it would be improper for the contract and property rights of the Associations' members to be affected by any purported voluntary resolution of Plaintiff's claims" (doc. 39, at 5), the Court declines to accept the Associations' speculation that any settlement will damage their interests. By fretting about potential harm stemming from any agreement that Defenders of Wildlife and the Federal Defendants may reach, the Associations place the cart before the horse and ask the Court to deal in shadowy hypotheticals.[2]

## III.    Conclusion.

After weighing and balancing the competing interests, the Court is satisfied that the considerable benefits of a brief stay will substantially outweigh the negligible risk of harm or prejudice to any party. Because a stay will serve the interests of justice, the Court exercises its discretion by **granting** the Joint Motion for Stay of Litigation (doc. 38). This action, and all deadlines therein, is hereby **stayed**. The stay will expire by its terms effective **October 13, 2010**. The parties are **ordered** to file a joint status report concerning the status of their settlement negotiations by no later than **October 13, 2010**. If this action is not settled in its entirety by that time, the parties are **ordered** to file a joint proposed scheduling order by no later than **October 18, 2010**. Once the stay is lifted, the Court will enter new briefing schedules for

---

[2]     Besides, common sense indicates that if the Associations fear adverse repercussions from any deal reached by the Defenders of Wildlife and the Federal Defendants, perhaps they should ask for a seat at the table during those negotiations to ensure that their voices are heard. Of course, by making this suggestion, the Court is not compelling the Associations' participation in, or otherwise dictating the parameters of, those discussions.

all pending motions to ensure that they are adjudicated promptly (including without limitation all jurisdictional issues raised therein).

DONE and ORDERED this 31st day of August, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE