# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DEFENDERS OF WILDLIFE, )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>BUREAU OF OCEAN ENERGY )<br>MANAGEMENT, REGULATION, AND )<br>ENFORCEMENT, *et al.*, )<br>    Defendants, )<br> )<br>AMERICAN PETROLEUM INSTITUTE, )<br>*et al.*, )<br>    Intervenor-Defendants. ) | CIVIL ACTION 10-0254-WS-C |

## ORDER

This matter comes before the Court on Chevron U.S.A., Inc.'s Motion for Leave to Intervene as Defendant (doc. 40). All other parties have been afforded an opportunity to be heard on this Motion, and only plaintiff, Defenders of Wildlife, has opposed it. The Motion is now ripe for disposition.[1]

**I.     Posture of this Action.**

Defenders of Wildlife brought this action against various governmental defendants (specifically, the Bureau of Ocean Energy Management, Regulation, and Enforcement ("BOEM"); the United States Department of the Interior; and Ken Salazar) concerning their authorization of oil and gas leases and related drilling operations in the Gulf of Mexico. In the operative Third Amended Complaint, plaintiff asserts claims that BOEM violated the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA") by failing

---

[1] As a housekeeping matter, review of the file reveals that technically still pending is the Motion to Dismiss the Second Amended Complaint (doc. 36) filed by intervenors American Petroleum Institute, Independent Petroleum Association of America, US Oil & Gas Association, and International Association of Drilling Contractors. Of course, that Motion has been superseded by plaintiffs' Third Amended Complaint and intervenors' new Motion to Dismiss (doc. 63) directed at that pleading. To avoid potential confusion or redundancy, the Clerk's Office is directed to terminate the intervenors' Motion to Dismiss the Second Amended Complaint as **moot**.

to prepare a supplemental environmental impact statement ("EIS") and environmental assessment ("EA") for lease sales in the Gulf following the Deepwater Horizon oil spill that commenced on April 20, 2010; that BOEM violated the APA by accepting bids for new oil drilling leases after the Deepwater Horizon spill without first supplementing the EIS; that BOEM violated the Endangered Species Act ("ESA") and the APA by proceeding with lease sales in the Gulf post-Deepwater Horizon without reinitiating consultation with the National Maritime Fisheries Service and the U.S. Fish and Wildlife Service; and that BOEM violated the ESA and the APA by failing to insure that its actions with respect to offshore drilling would not jeopardize endangered or threatened species. Among the remedies requested in the Third Amended Complaint are that BOEM's decisions to accept bids for new leases in Lease Sale 213 since April 20, 2010 be vacated and that all future lease sales under the 2007-2012 Lease Sale Program be enjoined until a supplemental EIS is prepared.

On August 9, 2010, the undersigned entered an Order (doc. 31) granting leave to the American Petroleum Institute, Independent Petroleum Association of America, US Oil & Gas Association, and International Association of Drilling Contractors (collectively, the "Associations") to intervene as defendants pursuant to Rule 24, Fed.R.Civ.P. No parties formally objected to or opposed the Associations' request to intervene. Following the granting of their Rule 24 motion, the Associations have been an active force in this litigation, and have moved to dismiss the Third Amended Complaint.

Now, Chevron U.S.A., Inc. ("Chevron") seeks to intervene as a party defendant pursuant to both the intervention as a matter of right and the permissive intervention prongs of Rule 24. Plaintiff opposes the motion on a single narrow ground.

## II.     Chevron's Petition to Intervene.

As noted, Chevron's request to intervene is governed by Rule 24, Fed.R.Civ.P. "Rule 24 provides two avenues for a nonparty to intervene in a lawsuit; intervention as of right and intervention with permission of the court." *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1246 (11th Cir. 2006); *see also Ciba Specialty Chemicals Corp. v. Tenesaw Land and Timber Co.*, 233 F.R.D. 622, 624-28 (S.D. Ala. 2005) (reciting both intervention as of right and permissive intervention principles). To intervene as of right pursuant to Rule 24(a), a party "must show that it has an interest in the subject matter of the suit, that its ability to protect that interest may be impaired by the disposition of the suit, and that existing parties in the suit cannot

adequately protect that interest." *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (*citing Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1250 (11th Cir. 2002)). Even if a nonparty lacks a right to intervene, it may still be permitted to intervene in the court's discretion under Rule 24(b) if the "applicant's claim or defense and the main action have a question of law or fact in common." *Bayshore*, 471 F.3d at 1246 (citation omitted).[2] A motion to intervene must also be timely, whether it proceeds under Rule 24(a) or Rule 24(b). *See, e.g., Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007) (intervention as of right is appropriate only if the "application to intervene is timely"); *Brown ex rel. O'Neill v. Bush*, 2006 WL 2591874, *2 (11th Cir. Sept. 11, 2006) ("Under both Fed.R.Civ.P. 24(a) and 24(b), a party must show that its application to intervene was timely.").

The Court first considers Chevron's application for intervention as of right pursuant to Rule 24(a). Defenders of Wildlife does not dispute that Chevron has met the requirements that it have an interest in the subject matter of the suit, that its ability to protect that interest may be impaired by the disposition of the suit, or that the motion to intervene be timely. Any such objections would have been futile, in any event. Chevron's evidence is that BOEM has awarded it 46 leases in Lease Sale 213, some 39 of which were accepted after April 20, 2010. (Couvillion Decl. (doc. 40-1), ¶¶ 7-8.) Chevron also shows that it has paid the Department of the Interior the full bid price, as well as the first annual rental payments, for all 39 leases, totaling millions of dollars. (*Id.*, ¶ 9.) Chevron's evidence is that if those post-April 20 leases are vacated as Defenders of Wildlife requests, Chevron would be deprived of the use of those leases for which it has already paid, its exploration and development activities would grind to a halt, and it would stand to lose millions of dollars in lost production opportunities. (*Id.*) These facts confirm that Chevron's "interest in the subject matter of the litigation is direct, substantial and legally protectable." *Georgia*, 302 F.3d at 1249. Likewise, if Defenders of Wildlife were to prevail on its claims that BOEM's decision to accept bids on those leases should be vacated, then Chevron's ability to protect its interest as described above would plainly be impaired, and perhaps irreparably so. *See id.* at 1258 ("Where a party seeking to intervene in an action claims

---

[2] In the permissive intervention context, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Rule 24(b)(3), Fed.R.Civ.P.

an interest in the very property and very transaction that is the subject of the main action, the potential *stare decisis* effect may supply the practical disadvantage which warrants intervention as of right.") (citation omitted).

Nor is there any question that Chevron's Rule 24 motion is timely, given that it was filed just three months after this lawsuit began, before the commencement of discovery, and before the federal defendants had even filed a responsive pleading. The timing of Chevron's motion is such that it cannot possibly prejudice any other party or delay adjudication of this action. Clearly, the timeliness requirement is satisfied. *See Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (motion to intervene timely when filed seven months after complaint, no discovery had begun, and no party could have been prejudiced by the intervention).

Defenders of Wildlife's sole objection to Chevron's Motion to Intervene centers on the requirement that intervention as of right is unavailable if "existing parties adequately represent that interest" of the proposed intervenor. Rule 24(a)(2), Fed.R.Civ.P. Plaintiff's reasoning is that the Associations (of one of which Chevron is a member) already represent Chevron's interests in this proceeding and that Chevron has failed to prove otherwise.

Plaintiff is correct that Chevron bears the burden of showing inadequate representation by existing parties. But this is not an onerous burden. To the contrary, the Eleventh Circuit has characterized it as "minimal" and has explained that a putative intervenor satisfies it by showing merely that the current party's representation "may be inadequate." *Stone v. First Union Corp.*, 371 F.3d 1305, 1311 (11th Cir. 2004) ("Interveners need only show that the current plaintiff's representation may be inadequate, however, and the burden for making such a showing is minimal.") (citation and internal quotation marks omitted); *Georgia*, 302 F.3d at 1255 ("The proposed intervenor has the burden of showing that the existing parties cannot adequately represent its interest, but this burden is treated as minimal.") (citations and internal quotation marks omitted).

Chevron's showing meets this modest threshold. In particular, Chevron's evidence shows that the Associations include many members who "have no or very few deepwater leases or investments in the development of deepwater technology" and are instead "more focused on shallow water exploration and development." (Couvillion Decl., ¶ 15.) By contrast, approximately two-thirds of Chevron's 600+ leases in the Gulf of Mexico involve water depths of greater than 1,000 feet, and Chevron is a major player in deepwater drilling and exploration

activities in the Gulf. (*See id.*, ¶¶ 3-4.) More fundamentally, as noted *supra*, Chevron was the successful bidder (and has paid millions of dollars) for dozens of post-April 20 leases whose vacatur Defenders of Wildlife seeks to effectuate. As such, Chevron has a much more narrowly focused, direct and specific interest in this controversy than the broader and more general industry-wide concerns that may animate the Associations' intervention and endgame strategies. There is no indication, and no reason to believe, that Chevron will be able to steer the Associations to act in accordance with its wishes in this action, even though Chevron's interests (from both a quantitative and qualitative standpoint) in these proceedings may eclipse those of many other Association members by a wide margin. On this record, it is not difficult to conceive of an array of scenarios in this litigation in which Chevron's interests may diverge from, or otherwise not align fully with, those of the Associations, who may be more concerned with shallow-water drilling and industry-wide impacts, and less concerned with Chevron's specific financial interests in the specific deepwater leases whose continued viability and utility are threatened by Defenders of Wildlife's claims.

Although Defenders of Wildlife is correct that Chevron has not proven "that its interests in this litigation actually diverge from those of" the Associations (doc. 58, at 2), Chevron's burden under Rule 24(a) is not so stringent. The Court agrees with Chevron that the Association's representation of its interests <u>may be</u> inadequate, despite the obvious overlap between them.[3] On that basis, Chevron has satisfied the "inadequate representation" element of the Rule 24(a) inquiry. Because the Court has also found that all other prerequisites for intervention as of right are present here, Chevron is entitled to intervene under Rule 24(a).

---

[3] In that regard, it bears noting the observations of the U.S. District Court for the District of Columbia in an unpublished slip opinion entered in *Center for Biological Diversity v. Ken Salazar*, Civil Action No. 10-cv-816 (TFH), on November 2, 2010. In that opinion, Judge Hogan opined that, notwithstanding Chevron's membership in an association that had previously intervened, the association had "other large and powerful members, apparently with different types of assets in the Gulf than does Chevron," and there was no reason to think that Chevron or "other companies focused on deepwater assets would effectively control" that association's litigation strategy, such that Chevron's interests "may be" inadequately represented by existing intervenors. (Doc. 56, Exh. 1, at 3.) Those same considerations are present in this case, as well, and the same or analogous reasoning is applicable here. Plaintiff's suggestion that the *Center for Biological Diversity* opinion should be disregarded because that court did not face arguments similar to those interposed by Defenders of Wildlife here is both inaccurate and unpersuasive.

## III. Conclusion.

For all of the foregoing reasons, Chevron's Motion for Leave to Intervene (doc. 40) as an intervenor-defendant is **granted** as of right, pursuant to Rule 24(a), Fed.R.Civ.P.[4] That said, in granting this Motion, the Court expressly relies on Chevron's representation that it "is willing and able to cooperate with the other intervenor-defendants" and that it "will coordinate as much as possible with the other intervenor-defendants" herein. (Doc. 40, at 21-22.) It would be counterproductive and detrimental to the interests of efficiency and justice for Chevron and the Associations to deluge this Court and adverse parties with a flood of duplicative or substantially overlapping materials as this case proceeds. Accordingly, in motion practice and discovery alike, Chevron and the Associations are **ordered** to work together in good faith -- where it is reasonably possible to do so without compromising areas of divergent interests -- to coordinate and consolidate their filings, discovery requests, discovery responses, and so on, to avoid unnecessary duplication and maximize the efficiency of these proceedings for all concerned.

Chevron is **ordered**, on or before **December 16, 2010**, to file as a freestanding pleading the proposed answer found at Exhibit A to document 64.

The Associations' Motion to Dismiss the Second Amended Complaint (doc. 36) is **moot**.

DONE and ORDERED this 9th day of December, 2010.

                                          s/ WILLIAM H. STEELE
                                          CHIEF UNITED STATES DISTRICT JUDGE

---

[4] Alternatively, the Court finds that Chevron is properly allowed to intervene on a permissive intervention theory. "Permissive intervention under Fed. R. Civ. Proc. 24(b) is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties." *Mt. Hawley*, 425 F.3d at 1312 (citation omitted). Chevron's defenses to Defenders of Wildlife's requests for declaratory and injunctive relief unquestionably share numerous common questions of law or fact with issues already joined in this litigation. Additionally, there is no reason to believe that Chevron's participation will delay or prejudice the adjudication of any other party's rights, particularly with the "good-faith coordination" requirement being imposed on all intervenors. As such, even if intervention as of right were somehow improper under Rule 24(a), the Court would nonetheless exercise its discretion to allow Chevron to intervene permissively pursuant to Rule 24(b). Either way, Chevron's Motion for Leave to Intervene would be granted.