**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| DEFENDERS OF WILDLIFE,<br>      Plaintiff,<br><br>      v.<br><br>BUREAU OF OCEAN ENERGY<br>MANAGEMENT, REGULATION, AND<br>ENFORCEMENT; UNITED STATES<br>DEPARTMENT OF THE INTERIOR; and<br>KEN SALAZAR, SECRETARY OF THE<br>INTERIOR,<br>      Defendants,<br><br>AMERICAN PETROLEUM INSTITUTE,<br>INDEPENDENT PETROLEUM<br>ASSOCIATION OF AMERICA, US OIL<br>& GAS ASSOCIATION,<br>INTERNATIONAL ASSOCIATION OF<br>DRILLING CONTRACTORS, AND<br>CHEVRON U.S.A. INC.,<br>      Intervenor-Defendants. | C. A. No. 1:10-cv-00254 (WHS-WEC) |

**REPLY IN SUPPORT OF ASSOCIATION INTERVENORS' MOTION TO DISMISS
THE THIRD AMENDED COMPLAINT**

| | |
|---|---|
| Steven J. Rosenbaum<br>Bradley K. Ervin<br>COVINGTON & BURLING LLP<br>1201 Pennsylvania Avenue N.W.<br>Washington, D.C. 20004<br>Telephone:  (202) 662-5568<br>Facsimile:  (202) 778-5568<br>srosenbaum@cov.com | Brian P. McCarthy  MCCAB 7434<br>McDowell Knight Roedder<br>& Sledge LLC<br>11 North Water Street, Suite 13290<br>P.O. Box 350<br>Mobile, Alabama 36601<br>Telephone: (251) 431-8806<br>Fax: (251) 432-5303<br>bmccarthy@mcdowellknight.com<br><br>Counsel for Defendant-Intervenors<br>American Petroleum Institute, Independent<br>Petroleum Association of America, US Oil<br>& Gas Association, and International<br>Association of Drilling Contractors |

January 5, 2011

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

I.      VENUE IS NOT PROPER IN THIS DISTRICT. ............................................................. 1

II.     THE FIRST, THIRD AND FOURTH CLAIMS FOR RELIEF ARE NOT
       WITHIN THE SUBJECT MATTER JURISDICTION OF THIS COURT. ...................... 3

       A.      DOW's Claims Relating to Future Lease Sales Are Not Ripe. ............................. 3

       B.      The Fifth Circuit Has Exclusive Jurisdiction Over DOW's Challenge to
             the Government's Approval of Drilling Plans. ...................................................... 7

III.    PLAINTIFF'S CHALLENGES TO LEASE SALE 213 FAIL TO STATE A
       CLAIM UPON WHICH RELIEF CAN BE GRANTED. ................................................ 13

       A.      As a Matter of Law, the Government Had No Obligation to Prepare a
             Supplemental EIS With Respect to Lease Sale 213............................................. 13

       B.      DOW's ESA Challenge to Completed Lease Sales, Including Lease Sale
             213, Fails as a Matter of Law................................................................................ 14

CONCLUSION........................................................................................................................... 15

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Aland v. Kempthorne*,
No. 07cv4358, 2007 WL 4365340 (N.D. Ill. Dec. 11, 2007) ................................... 3

*Alaska Wilderness League v. Kempthorne*,
548 F.3d 815 (9th Cir. 2008), *vacated*, 559 F.3d 916 (9th Cir. 2009) ...................... 9

*Am. Bird Conservancy v. FCC*,
545 F.3d 1190 (9th Cir. 2008) ...................................................................... 10, 11

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ...................................................................................... 8

*Ass'n of Citizens to Protect & Preserve the Env't of the Oak Grove Cmty. v. FAA*,
287 F. App'x 764 (11th Cir. 2008) ................................................................... 12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................... 8

*Bennett v. Spear*,
520 U.S. 154 (1997) .......................................................................................... 6

*Bryant v. Rich*,
530 F.3d 1368 (11th Cir. 2008) .......................................................................... 1

*Chiron Corp. v. NTSB*,
27 F. Supp. 2d 257 (D.D.C. 1998) ..................................................................... 11

*City of Rochester v. Bond*,
603 F.2d 927 (D.C. Cir. 1979) ........................................................................... 12

*City of Tacoma, Washington v. Nat'l Marine Fisheries Serv.*,
383 F. Supp. 2d 89 (D.D.C. 2005) ..................................................................... 10

*Coalition for Sustainable Resources, Inc. v. U.S. Forest Serv.*,
259 F.3d 1244 (10th Cir. 2001) ........................................................................... 6

*Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Dep't of the Interior*,
100 F.3d 837 (10th Cir. 1996) ............................................................................. 2

*Ctr. for Biological Diversity, et al. v. Salazar, et al.*,
No. 10-60417 (Consolidated) (5th Cir.) ............................................................. 10

*Edwardsen v. U.S. Dep't of the Interior*,
268 F.3d 781 (9th Cir. 2001) ............................................................................. 10

*ErieNet, Inc. v. Velocity Net, Inc.*,
156 F.3d 513 (3d Cir. 1998) .............................................................................. 11

*Forest Guardians v. Johanns*,
450 F.3d 455 (9th Cir. 2006) ............................................................................... 7

*Geertson Farms, Inc. v. Johanns*,
439 F. Supp. 2d 1012 (N.D. Cal. 2006) ........................................................ 10, 12

*Gordon v. Norton*,
322 F.3d 1213 (10th Cir. 2003) ....................................................................... 6

*Gulf Restoration Network, Inc., et al. v. Salazar, et al.*,
No. 10-60411 (Consolidated) (5th Cir.) ......................................................... 10

*Hunter v. FERC*,
569 F. Supp. 2d 12 (D.D.C. 2008) ................................................................ 12

*Jung v. Ass'n of Am. Med. Colls.*,
300 F. Supp. 2d 119 (D.D.C. 2004) ................................................................ 8

*La Voz Radio de la Communidad v. FCC*,
223 F.3d 313 (6th Cir. 2000) ....................................................................... 11

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*,
417 F.3d 1272 (D.C. Cir. 2005) ...................................................................... 5

*Native Village of Point Hope v. Salazar*,
378 F. App'x 747 (9th Cir. May 13, 2010) ...................................................... 9

*Nevada v. Dep't of Energy*,
457 F.3d 78 (D.C. Cir. 2006) .......................................................................... 5

*North Slope Borough v. Andrus*,
642 F.2d 589 (D.C. Cir. 1980) ................................................................. 14, 15

*Nw. Forest Res. Council v. Babbitt*,
No. 93cv1579, 1994 WL 908586 (D.D.C. Apr. 13, 1994) .............................. 3

*Ohio Forestry Ass'n v. Sierra Club*,
523 U.S. 726 (1998) ....................................................................................... 5

*Ouachita Watch League v. Jacobs*,
463 F.3d 1163 (11th Cir. 2006) ...................................................................... 5

*Public Citizen v. U.S. Trade Representative*,
5 F.3d 549 (D.C. Cir. 1993) ......................................................................... 11

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
601 F.3d 1096 (10th Cir. 2010) ...................................................................... 7

*Robertson v. Methow Valley Citizens Council*,
490 U.S. 332 (1989) ................................................................................... 4, 5

*Schilling v. Rogers*,
363 U.S. 666 (1960) ..................................................................................... 12

*Schneider v. Dumbarton Developers, Inc.*,
767 F.2d 1007 (D.C. Cir. 1985) ..................................................................... 2

*SEC v. Ross*,
504 F.3d 1130 (9th Cir. 2007) ....................................................................... 2

*Sec'y of the Interior v. California*,
464 U.S. 312 (1984) ..................................................................................... 13

*Shell Oil Co. v. Babbitt*,
   920 F. Supp. 559 (D. Del. 1996) ........................................................... 3

*Shell Oil Co. v. FERC*,
   47 F.3d 1186 (D.C. Cir. 1995) ............................................................. 10

*Sierra Club v. Penfold*,
   857 F.2d 1307 (9th Cir. 1988) ............................................................. 11

*Sierra Club v. U.S. Dep't of Energy*,
   287 F.3d 1256 (10th Cir. 2002) ........................................................ 5, 7

*Telecomms. Research & Action Ctr. v. FCC*,
   750 F.2d 70 (D.C. Cir. 1984) ............................................................... 11

*Time Warner Entm't Co. v. FCC*,
   93 F.3d 957 (D.C. Cir. 1996) ............................................................... 12

*Union Oil Co. v. United States*,
   512 F.2d 743 (9th Cir. 1975) ................................................................. 3

*Vermont Yankee Nuclear Power Corp. v. Natural Resources Def. Council, Inc.*,
   435 U.S. 519 (1978) ............................................................................ 14

*Vill. of False Pass v. Clark*,
   733 F.2d 605 (9th Cir. 1984) .......................................................... 13, 14

*Wendy's Int'l, Inc. v. City of Birmingham*,
   868 F.2d 433 (11th Cir. 1989) ............................................................... 4

*Wildlaw v. U.S. Forest Serv.*,
   471 F. Supp. 2d 1221 (M.D. Ala. 2007) ................................................ 5

## Statutes

16 U.S.C. § 1536(d) ................................................................................ 15

28 U.S.C. § 1331 .................................................................................... 11

28 U.S.C. § 1361 .................................................................................... 11

28 U.S.C. §§ 2201-02 ............................................................................ 11

43 U.S.C. § 1349(b) .................................................................................. 9

43 U.S.C. § 1349(c)(4) .............................................................................. 9

43 U.S.C. § 1349(c)(2) .............................................................................. 9

5 U.S.C. §§ 551 *et seq* ........................................................................... 11

## Other Authorities

75 Fed. Reg. 44276 (July 28, 2010) .......................................................... 4

75 Fed. Reg. 69122 (Nov. 10, 2010) .......................................................... 4

75 Fed. Reg. 70023 (Nov. 16, 2010) .......................................................... 4

**Rules**

Fed. R. Civ. P. 24(a)(2)...................................................................................................... 2

**INTRODUCTION**

As shown in the Associations' opening brief, venue is not proper in this Court, and the better reasoned and more recent authority allows intervenors to raise that issue.

Furthermore, Plaintiff Defenders of Wildlife's ("DOW") opposition to the Associations' motion to dismiss misstates the applicable legal standard,[1] largely fails to address the Associations' substantive showings that the Third Amended Complaint is outside the subject matter jurisdiction of this Court, and otherwise fails to state a claim for relief. Instead, DOW mischaracterizes applicable law and employs an improper (and ultimately unavailing) bait-and-switch with respect to the allegations raised by its own Third Amended Complaint. Specifically, although DOW in its Third Amended Complaint dropped all the counts of its Second Amended Complaint that challenged the Government's approvals of drilling plans—given the Associations' showing in their motion to dismiss the Second Amended Complaint that exclusive jurisdiction over such challenges resides in the court of appeals—DOW now improperly purports to rely upon those very drilling plans—over which this Court has no jurisdiction—as a centerpiece of its opposition to the Associations' motion to dismiss.

**I.     VENUE IS NOT PROPER IN THIS DISTRICT.**

In their Motion to Dismiss and accompanying Memorandum (collectively "Motion to Dismiss") (Dkts. #63, 63-1), the Associations firmly established that the Third Amended Complaint should be dismissed for improper venue because a substantial part of the events or

---

[1]     Plaintiff erroneously contends that the Court must accept the veracity of all allegations in the Third Amended Complaint, *see* Opposition 4. This is not so with respect to the Associations' challenges to subject matter jurisdiction and to venue, as to which the Court may look outside the Complaint and "resolve factual disputes." *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008).

omissions giving rise to DOW's claims did not occur in this district. *See* Motion to Dismiss at 4–7. DOW principally responds that "a person intervening on either side of the controversy may not object to improper venue." Opposition at 21 (quotation omitted). While a few courts may have accepted that view, the better reasoned and more recent holdings are that where, as here, "a party has the right to intervene under [Fed. R. Civ. P. 24(a)(2)], the intervenor becomes no less a party than others and has the right to file legitimate motions, including venue motions." *Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Dep't of the Interior*, 100 F.3d 837, 844 (10th Cir. 1996); *cf. Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, 1017 (D.C. Cir. 1985) (An intervenor "is treated just as if it were an original party.").

Rule 24(a)(2) grants intervention when the disposition of a lawsuit may as a practical matter impede the third party's ability to protect its interests. *See SEC v. Ross*, 504 F.3d 1130, 1149–50 (9th Cir. 2007). Accordingly, "[o]ne means of protecting his interest—perhaps [the] best"— may be "to object to the court's lack of jurisdiction over his person or to the propriety of venue." *Id*. at 1149. Where, as here, an intervenor promptly challenges venue, there "is little reason to deprive him of any of his procedural defenses merely because the original plaintiff failed to name him." *Id*. at 1150. "Rather, the *quid pro quo* for … intervention is that [the intervenor] consents to have the district court determine all issues in the case, including issues of jurisdiction, venue and service of process." *Id*. The same principles should apply in this case.

Because DOW has not otherwise substantively rebutted the Associations' showing that a substantial part of the events or omissions giving rise to DOW's claims did not occur in this district—and, contrary to DOW's suggestion, Opposition at 24–25, there is no real property

directly in dispute in this matter,[2] only the propriety of federal administrative decisions—this lawsuit should be dismissed for improper venue.[3]

## II. THE FIRST, THIRD AND FOURTH CLAIMS FOR RELIEF ARE NOT WITHIN THE SUBJECT MATTER JURISDICTION OF THIS COURT.

### A. DOW's Claims Relating to Future Lease Sales Are Not Ripe.

The First, Third and Fourth Claims for Relief allege that the Government improperly failed "to prepare a Supplemental Environmental Impact Statement" ("EIS") under the National Environmental Policy Act ("NEPA"), and failed to "reinitiate consultation" or "insure that its actions will not jeopardize the likelihood of survival of endangered and threatened species" under the Endangered Species Act ("ESA") following the Deepwater Horizon oil spill. Third Amended Complaint ("TAC") ¶ 2. *See also* First Claim for Relief ¶¶ 57–61; Third Claim for Relief ¶¶ 66–70; Fourth Claim for Relief ¶¶ 71–74. To remedy these alleged statutory violations, DOW principally requests "an injunction of all current and future lease sales authorized" in the Government's existing EIS governing oil and gas lease sales on the Outer Continental Shelf ("OCS") of the Gulf of Mexico ("Multisale EIS") and "a declaration that [the Government] ha[s] failed both to reinitiate consultation and insure that there will be no jeopardy … with respect to

---

[2]     Although OCS leases constitute property interests, *Union Oil Co. v. United States*, 512 F.2d 743, 747 (9th Cir. 1975), the "actual leasehold interest" is not at issue here because "[e]ssentially, this matter involves review of an administrative" decision, *Shell Oil Co. v. Babbitt*, 920 F. Supp. 559, 566 (D. Del. 1996).

[3]     DOW continues to cite the Deepwater Horizon oil spill, an event that does not give rise to DOW's claim, but simply purportedly provides factual information supportive of its claim. That is not enough. *See* Opposition at 23; Motion to Dismiss at 5–6. DOW also cites *Aland v. Kempthorne*, No. 07cv4358, 2007 WL 4365340, at *3 (N.D. Ill. Dec. 11, 2007), but that court based venue in part on the fact that the challenged administrative decision was predicated in part on activities of the agency's field officers within the state. *See also id.* (citing *Nw. Forest Res. Council v. Babbitt*, No. 93cv1579, 1994 WL 908586, at *2 (D.D.C. Apr. 13, 1994), which relied in part on the presence within the state of an agency field office that assisted in promulgating the challenged rule).

the lease sales authorized" in the Multisale EIS. TAC ¶ 3. *See also* First Claim for Relief ¶¶ 57–61; Third Claim for Relief ¶¶ 66–70; Fourth Claim for Relief ¶¶ 71–74; Prayer for Relief ¶¶ A, D.

As demonstrated in the Associations' Motion to Dismiss, DOW's claims with respect to future lease sales are not ripe because the Secretary canceled the only lease sale remaining in 2010 after the Deepwater Horizon oil spill, and published in the Federal Register a notice of intent to prepare a supplemental EIS considering, *inter alia*, whether to cancel all remaining lease sales authorized under the Multisale EIS. *See* Motion to Dismiss at 8–11, 16–17. *See also* 75 Fed. Reg. 44276 (July 28, 2010); 75 Fed. Reg. 69122, 69122–23 (Nov. 10, 2010); 75 Fed. Reg. 70023, 70024 (Nov. 16, 2010). Thus, the Government has not yet determined whether to proceed with the remaining lease sales contemplated in the Multisale EIS, and if it does so (as the Associations indeed hope and expect), it will be on the basis of a supplemental EIS that has not yet been prepared and whose adequacy cannot yet be assessed. Accordingly, DOW's statutory challenges to future lease sales relying on the Multisale EIS are "necessarily … based upon the possibility of an occurrence which may never come to pass" and, thus, "there is as yet no controversy … ripe for adjudication." *Wendy's Int'l, Inc. v. City of Birmingham*, 868 F.2d 433, 436 (11th Cir. 1989).

Rather than contest the merits of the Associations' ripeness arguments, DOW falls back on vague statements that a NEPA or ESA claim is ripe "at the time the agency fails to comply," Opposition at 13–14 (citation and quotation omitted), without regard for the specific allegations relating to the future lease sales at issue in this case. To be sure, it is "well settled that NEPA itself does not mandate particular results, but simply prescribes the necessary process." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989). But that procedural

guarantee is solely in relation to a specific "proposed action" by the federal government. *Robertson*, 490 U.S. at 351 (describing NEPA procedural requirements in relation to agency issuance of permit for skiing in national forest).

Here, DOW challenges the Government's compliance with NEPA and ESA procedures in relation to "proposed actions"—future lease sales—that have not occurred, and if they do occur, will do so as a result of an environmental review that is plainly ongoing, a fact DOW ultimately admits. Opposition at 5. (The Government's "NEPA and ESA analyses are not yet complete.")

Because a NEPA claim is premature before the Government has actually conducted its environmental assessment with respect to the subject agency action, DOW's challenge to future lease sales is not ripe until the Government decides (1) whether to proceed with the lease sales and (2) what environmental review supports that decision. *See Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732–33 (1998); ("[T]he ripeness inquiry is designed … to protect the agencies from judicial interference until an administrative decision has been formalized….") (quotation omitted); *Nevada v. Dep't of Energy*, 457 F.3d 78, 84 (D.C. Cir. 2006) (NEPA challenge not ripe with respect to "plan [that] might be implemented at some future time"); *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1174 (11th Cir. 2006) ("Because of the rather special nature of the injury (that is, the [alleged] failure to follow NEPA), the issue is ripe at the time the agency fails to comply."); *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1286 (D.C. Cir. 2005) (NEPA challenge ripe at time agency issued permits).[4]

---

[4]     Unlike the instant dispute, in each of the cases upon which DOW relies, the federal agency had already completed its proposed environmental review and/or taken the subject administrative action. *See Wildlaw v. U.S. Forest Serv.*, 471 F. Supp. 2d 1221, 1225 (M.D. Ala. 2007) (NEPA challenge filed after Forest Service's promulgation of categorical exclusion); *Sierra Club v. U.S. Dep't of Energy*, 287 F.3d 1256, 1260 (10th Cir. 2002) (NEPA and ESA challenges filed after agency decision granting an easement).

DOW's ESA challenge similarly violates these norms. The Bureau of Ocean Energy Management, Regulation, and Enforcement ("BOEMRE") recently "reinitiated its ESA consultation" with letters to the United States Fish and Wildlife Service and the National Marine Fisheries Service. *See* Federal Defendants' Motion to Dismiss (Dkt. #66-1) at 17. DOW thus improperly seeks to procure judicial intervention before the ESA consultations have been completed or the decision whether to conduct future lease sales has been formalized,[5] and before any effects have been felt by the plaintiff. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (An ESA challenge can be mounted only when the agency's action is final, meaning both that the agency action "mark[s] the consummation of the agency's decisionmaking process, [and] not be of a merely tentative or interlocutory nature," and "be one by which rights or obligations have been determined, or from which legal consequences will flow.")[6]; *Coalition for Sustainable Resources, Inc. v. U.S. Forest Serv.*, 259 F.3d 1244, 1251 (10th Cir. 2001) (ESA claim not ripe when Forest Service "is actively considering [its] course of action"); *Gordon v. Norton*, 322 F.3d 1213, 1221–22 (10th Cir. 2003) (refusing to "[e]xercis[e] jurisdiction over this case before [the Fish and Wildlife Service] has formulated a definitive course of action…"). DOW relies upon decisions in which the ESA claim was ripe because the agency had made a final decision *not to*

---

[5]     DOW mischaracterizes the issue as merely going to the *timing* of future lease sales. *See* Opposition at 13. Although the Associations certainly hope and expect that such sales will proceed, the Government's ongoing environmental inquiries are not limited to timing.

[6]     The biological opinion at issue in *Bennett* had "direct and appreciable legal consequences" because its issuance "and accompanying Incidental Take Statement alter[ed] the legal regime to which the action agency [was] subject, authorizing it to take the endangered species if (but only if) it complies with the prescribed conditions." *Id*. at 178. By contrast, given the BOEMRE's reinitiation of ESA consultations, and its general commitment to conduct additional environmental reviews before conducting any additional lease sales, the "agency decisionmaking process" clearly has not been "consummate[d]," and neither "rights or obligations" have been determined nor "legal consequences" imposed. *Bennett, supra*.

initiate consultation, *see, e.g.*, Opposition at 14 (citing *Sierra Club v. U.S. Dep't of Energy*, 287 F.3d 1256, 1264 (10th Cir. 2002)), but that is the precise opposite of the factual situation presented here.[7]

**B.    The Fifth Circuit Has Exclusive Jurisdiction Over DOW's Challenge to the Government's Approval of Drilling Plans.**

To obfuscate its failure to allege a ripe controversy, DOW attempts to refocus its claims on "offshore drilling activities in the Gulf." Opposition at 14–15. As an initial matter, this pleading reorientation finds scant factual support in a Third Amended Complaint principally turning on future lease sales. *See supra* pp. 3–4. *See also* TAC ¶ 60 (alleging Government "must prepare a supplemental Multisale EIS and [Environmental Assessments] for ongoing and future lease sales"). Indeed, DOW voluntarily dismissed its prior express challenges to drilling plan approvals in replacing its Second Amended Complaint with the instant Third Amended Complaint. *See* Notice of Voluntary Dismissal (Dkt. #60) at 1–2 (giving notice of voluntary dismissal of claims "with respect to [the Government's] approval of exploration plans and development/operations coordination documents, as reflected in Plaintiff's Third Amended Complaint"); *see also, e.g.*, Second Amended Complaint (Dkt. #33) ¶¶ 90–96. Having abandoned its express challenge to drilling plan approvals—notably, *after* the Associations moved to dismiss such claims, *see* Associations' Memorandum in Support of Motion to Dismiss

---

[7]    DOW does cite one Ninth Circuit decision by Judge Reinhardt allowing ESA claims to proceed even though consultations had been reinitiated. *See* Opposition at 10 (citing *Forest Guardians v. Johanns*, 450 F.3d 455 (9th Cir. 2006)). But even that single, isolated ruling turned on unique facts: that the agency might not, absent declaratory relief, engage in the comprehensive management and monitoring activities that formed the basis for concluding that no endangered species was being adversely affected. *Id.* at 462. No comparable situation is presented here. *See also Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1114–15 (10th Cir. 2010) (distinguishing *Forest Guardians v. Johanns* on this ground).

Second Amended Complaint (Dkt. #36-1) at 1–15—DOW now improperly seeks to revive the challenge as an implied centerpiece of the Third Amended Complaint.

Although the Third Amended Complaint includes a generalized request that this Court order the Government to comply with NEPA and the ESA "in connection with any further actions regarding exploratory drilling," Prayer for Relief ¶ C, at no point does the Third Amended Complaint lay a factual foundation alleging that specific drilling plans were approved pursuant to allegedly faulty environmental review after the Deepwater Horizon oil spill. Nor does DOW's Opposition point to factual allegations in the Third Amended Complaint supporting the now-claimed centrality of the Government's approval of drilling plans.[8] Indeed, despite the Opposition's contention that the Government "continu[es] to tier its approval of drilling plans" to the Multisale EIS, Opposition at 7, the Third Amended Complaint specifically alleges improper tiering only with respect to lease sales, *see* TAC ¶¶ 39 (Lease Sale 206), 46 (Lease Sale 213), 59 (Lease Sales 26 and 213). The Third Amended Complaint's allegation of "related drilling operations," TAC ¶ 1, is thus too vague to support DOW's present reliance on drilling plan approvals as the basis for its claims for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level."); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (noting a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable").

---

[8] The specific drilling approvals referenced in DOW's Opposition, *see* Opposition at 11–12, cannot salvage the Third Amended Complaint because "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004) (quotation omitted).

At any rate, DOW's pleading prestidigitation is unavailing because, even assuming the Third Amended Complaint properly alleges that the Government is violating NEPA and the ESA by relying on the Multisale EIS in "its administration of ongoing drilling and similar actions in the Gulf of Mexico," Opposition at 7; *see also id*. at 12, those claims are not within the subject matter jurisdiction of this Court.  While the OCS Lands Act generally provides jurisdiction in the district courts with respect to cases and controversies arising out of OCS operations, *see* 43 U.S.C. § 1349(b), Section 1349(c)(2) provides that "[a]ny action of the Secretary to approve, require modification of, or disapprove any exploration plan or development and production plan under this subchapter shall be subject to judicial review *only* in a United States court of appeals for a circuit in which an affected State is located."  43 U.S.C. § 1349(c)(2) (emphasis added).

Congress's use of the term "only" makes clear that the jurisdiction in the court of appeals established by Section 1349 is exclusive.  Indeed, Section 1349(c)(4) states that any action by the Secretary approving, requiring modification of, or disapproving any exploration plan or development and production plan "shall be specifically excluded from citizen suits" that the statute otherwise permits to be filed in federal district court.

Consistent with these statutory provisions, parties asserting ESA, NEPA and/or APA violations in connection with BOEMRE's approval of exploration and development plans, have routinely brought direct challenges in the circuit of the state adjacent to the proposed drilling operations.[9]  Indeed, other environmental groups have filed sixteen petitions now pending in the Fifth Circuit challenging BOEMRE's approval of Gulf of Mexico OCS drilling plans, *see*, *e.g.*,

---

[9]     *E.g.*, *Native Vill. of Point Hope v. Salazar*, 378 F. App'x 747 (9th Cir. May 13, 2010); *Alaska Wilderness League v. Kempthorne*, 548 F.3d 815 (9th Cir. 2008), *vacated*, 559 F.3d 916 (9th Cir. 2009).

*Gulf Restoration Network, Inc., et al. v. Salazar, et al.*, No. 10-60411 (Consolidated) (5th Cir.);

*Ctr. for Biological Diversity, et al. v. Salazar, et al.*, No. 10-60417 (Consolidated) (5th Cir.).

Such circuit court actions are in fact the *exclusive* means by which challenges to drilling plan approvals may be brought, including challenges alleging NEPA, ESA or APA violations in connection with such approvals. The Ninth Circuit has directly addressed this jurisdictional question, in the context of a claim that the Department of the Interior failed to live up to its NEPA obligations in connection with the approval of an OCS drilling plan. "Because the alleged NEPA violation arises under [the OCS Lands Act], which provides for exclusive jurisdiction in the court of appeals, we have original jurisdiction over the NEPA claim." *Edwardsen v. U.S. Dep't of the Interior*, 268 F.3d 781, 784 (9th Cir. 2001). *See also Shell Oil Co. v. FERC*, 47 F.3d 1186, 1192 (D.C. Cir. 1995) (recognizing the OCS Lands Act "provides that judicial review of decisions with respect to … exploration, development or production plans shall take place only in the courts of appeals."). The same exclusivity principle applies to ESA claims. *See, e.g., Am. Bird Conservancy v. FCC*, 545 F.3d 1190, 1193–95 (9th Cir. 2008) (ESA claim with respect to communications tower approval must be asserted in court of appeals in light of Federal Communications Act provision vesting courts of appeals with exclusive jurisdiction over challenges to FCC orders); *Geertson Farms, Inc. v. Johanns*, 439 F. Supp. 2d 1012, 1016–19 (N.D. Cal. 2006) (ESA claim with respect to tolerance levels for a herbicide in food must be asserted in court of appeals in light of Federal Food, Drug, and Cosmetics Act provision vesting courts of appeals with exclusive jurisdiction over challenges to tolerance levels); *City of Tacoma, Washington v. Nat'l Marine Fisheries Serv.*, 383 F. Supp. 2d 89, 92 (D.D.C. 2005) (provision of the Federal Power Act that vests the courts of appeals with exclusive jurisdiction to review

disputes over the licensing of hydroelectric facilities trumps ESA's general jurisdiction provisions).

These holdings are specific applications of the general rule that, when a special statute commits review to the court of appeals, "neither 28 U.S.C. § 1331 nor 28 U.S.C. § 1361 [both of which DOW purports to invoke here, *see* TAC ¶ 4] provides jurisdiction to district courts." *Chiron Corp. v. NTSB*, 27 F. Supp. 2d 257, 260 (D.D.C. 1998) (citing *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 72, 77 (D.C. Cir. 1984)). "'[F]ederal statutes frequently assign jurisdiction to a court other than the federal district courts,' and when they do so, 'Congress negates district court jurisdiction under [28 U.S.C.] § 1331.'" *La Voz Radio de la Communidad v. FCC*, 223 F.3d 313, 319 (6th Cir. 2000) (quoting *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 518–19 (3d Cir. 1998)).

District court jurisdiction is also unavailable under the other statutes relied upon by DOW (*see* TAC ¶ 4) — 5 U.S.C. §§ 551 *et seq.* (APA), and 28 U.S.C. §§ 2201-02 (power to issue declaratory judgments). "[D]istrict court review [is not] permissible here under … the APA, which provides for district court review when statutory review is inadequate. Where statutory review is available in the Court of Appeals it will rarely be inadequate." *Telecomms. Research*, 750 F.2d at 78.[10] A plaintiff similarly cannot escape a statutory provision providing exclusive jurisdiction in the court of appeals by invoking the Declaratory Judgment Act, *see Am. Bird Conservancy*, 545 F.3d at 1194, which in any event does not grant federal courts jurisdiction, but

---

[10]     DOW also cites NEPA itself, *see* TAC ¶ 4, but NEPA does not itself authorize a private right of action, and NEPA challenges are accordingly brought pursuant to the APA. *Public Citizen v. U.S. Trade Representative*, 5 F.3d 549, 551 (D.C. Cir. 1993); *Sierra Club v. Penfold*, 857 F.2d 1307, 1315 (9th Cir. 1988).

rather, authorizes a specific type of relief in cases where jurisdiction already exists. *Schilling v. Rogers*, 363 U.S. 666 (1960).

It makes no difference that DOW is challenging the procedure by which the BOEMRE approved the Gulf of Mexico drilling plans, *see* Opposition at 14, or is purporting to invoke statutes other than the OCS Lands Act itself, *i.e.*, ESA, NEPA and the APA. "Where a statute commits review of agency action to the Court of Appeals … challenges 'to the manner in which the agency has exercised' its statutory authority do not generally overcome the prohibition of district court review.'" *Hunter v. FERC*, 569 F. Supp. 2d 12, 15 (D.D.C. 2008) (quoting *Time Warner Entm't Co. v. FCC*, 93 F.3d 957, 965 (D.C. Cir. 1996)). "[C]ourts regularly hold that a challenge to the procedure of an agency action is tantamount to challenging the action itself." *Geertson Farms*, 439 F. Supp. 2d at 1020.

In short, a plaintiff cannot escape a statutory provision providing for judicial review of an agency's decisions in the court of appeals by contending that it is not challenging the agency's decision itself but merely a purported "failure to follow the procedural and substantive steps outlined in statutes outside the purview of" the agency. *Am. Bird Conservancy*, 545 F.3d at 1194 (citation omitted); *City of Rochester v. Bond*, 603 F.2d 927, 936 (D.C. Cir. 1979) ([W]e disagree that the district court may exercise concurrent jurisdiction merely because a violation of NEPA is alleged. The allegation may be raised directly in the courts of appeals; and insofar as it may affect the lawfulness of a directly appealable order we think it must be."); *Ass'n of Citizens to Protect & Preserve the Envt'l of the Oak Grove Cmty. v. FAA*, 287 F. App'x 764 (11th Cir. 2008) (court of appeals had exclusive jurisdiction to determine the adequacy of FAA's NEPA environmental assessment in connection with proposed airport expansion, given grant to the courts of appeals of jurisdiction over FAA orders).

Accordingly, to the extent DOW's claims relate to the Government's approval of drilling plans, they can only be pursued in the Fifth Circuit.

## III. PLAINTIFF'S CHALLENGES TO LEASE SALE 213 FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A. As a Matter of Law, the Government Had No Obligation to Prepare a Supplemental EIS With Respect to Lease Sale 213.

As demonstrated in the Associations' Motion to Dismiss, DOW's Second Claim for Relief—that the Government was required to prepare a supplemental EIS considering the Deepwater Horizon oil spill, TAC ¶¶ 62–65, before proceeding with Lease Sale 213—fails to state a viable claim because no "major Federal actio[n]" with respect the sale "remain[ed] to occur" as of the date of the Deepwater Horizon oil spill (April 20, 2010). *See* Motion to Dismiss at 14 (quotation omitted); *see also id.* at 11–16. Indeed, a large number of lease bids had already been accepted as of April 20, 2010, and the BOEMRE's only ongoing activity was limited to the evaluation of certain economic criteria for the remaining bids. *See id.* at 14.

DOW's two related responses to the Associations' showing mischaracterize the nature of OCS oil and natural gas leasing. DOW contends that "a lease sale cannot be divorced from its effects" and thus the "exploration, production, and related drilling activities occurring during the expected *40-year* life cycle of the leased tracts are … treated as part of the sale itself." Opposition at 17 (emphasis added). First, this argument substitutes out of whole cloth an effects test for the "remaining major federal action" test. Second, this argument ignores that offshore oil and gas development under the OCS Lands Act involves four separate stages: the five-year leasing program; issuance of leases in the lease sale; the exploration phase; and the development and production phase, *see Sec'y of the Interior v. California*, 464 U.S. 312, 337 (1984), and NEPA applies independently at each stage. *Vill. of False Pass v. Clark*, 733 F.2d 605, 608–09 (9th Cir. 1984) (recognizing that the four stages "are separate and distinct").

For the same reasons, DOW's reliance upon the Government's continuing authority to reject lease bids and suspend or cancel approved leases, *see* Opposition at 18, lacks merit. Moreover, as demonstrated in the Associations' Motion to Dismiss, mere retention of discretion does not extend the period of a "major federal action." *See* Motion to Dismiss at 14–16 (citing cases). Indeed, DOW's argument threatens to give any such "major federal action" an indefinite duration, thereby precluding consummation of the administrative process. *Cf. Vermont Yankee Nuclear Power Corp. v. Natural Resources Def. Council, Inc.*, 435 U.S. 519, 554–55 (1978) (if litigants were permitted to demand immediate consideration of new information at a late stage of the administrative proceedings "there would be little hope that the administrative process could ever be consummated…") (quotation omitted).

**B.     DOW's ESA Challenge to Completed Lease Sales, Including Lease Sale 213, Fails as a Matter of Law.**

DOW's arguments in support of its ESA challenge to completed lease sales, including Lease Sale 213, are similarly unavailing. *See* Motion to Dismiss at 17–19 (demonstrating that ESA challenge fails as a matter of law). As established above, DOW's proposed extension of Lease Sale 213 over the potential 40-year lifetime of the subsequent leases, *see* Opposition at 19, is contrary to governing law. *See also Vill. of False Pass*, 733 F.2d at 609 (recognizing that distinctions between oil and gas development stages apply equally to NEPA and ESA).

Moreover, contrary to DOW's suggestion, *see* Opposition at 19–20, the ESA claims in *North Slope Borough v. Andrus*, 642 F.2d 589 (D.C. Cir. 1980), as in this case, principally involved a challenge to the sufficiency of an operative biological opinion under the ESA. *See id.* at 609–10; Opposition at 11 (arguing that ESA claims are not moot because Government has indicated that it considers the existing biological opinions to remain in effect until reinitiated consultation is complete) (quoting DOW Exhs. 1, 2). Indeed, while DOW proposes that *North*

*Slope* is distinguishable because here the Government allegedly "*admitted* reinitiation was required," Opposition at 19, in fact, the federal defendants in *North Slope* were similarly in the process of "preparing a new biological opinion," *North Slope*, 642 F.2d at 609 n.125, in light of the "conceded 'incomplete information' on which the [existing] biological opinion" was based, *id*. at 611 n.143. Because there is no principled distinction between the two cases, this Court should follow the reasoning in *North Slope* finding no ESA violation at the lease sale stage within the highly "segmented approach of" the OCS Lands Act. *Id*. at 609–11. *See also* Motion to Dismiss at 18–19. *Compare* Opposition at 20 (eschewing reliance on 16 U.S.C. § 1536(d)) *with North Slope*, 642 F.2d at 607 (recognizing interrelation among ESA subsections).

Accordingly, to the extent DOW's Third and Fourth Claims for Relief challenge completed lease sales, including Lease Sale 213, those claims should be dismissed.

## CONCLUSION

The Third Amended Complaint should be dismissed in its entirety.

Respectfully submitted,

Steven J. Rosenbaum
Bradley K. Ervin
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Telephone: (202) 662-5568
Facsimile: (202) 778-5568
srosenbaum@cov.com

January 5, 2011

/s/ Brian P. McCarthy
Brian P. McCarthy  MCCAB 7434
MCDOWELL KNIGHT ROEDDER
& SLEDGE LLC
11 North Water Street, Suite 13290 (36602)
P.O. Box 350
Mobile, Alabama 36601
Telephone: (251) 431-8806
Fax: (251) 432-5303
bmccarthy@mcdowellknight.com

Counsel for Defendant-Intervenor
Associations

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of January 2011, a true and accurate copy of the foregoing Reply in Support of Motion to Dismiss the Third Amended Complaint was filed via the Court's CM/ECF system and served via the Court's CM/ECF system, upon the following:

Catherine M. Wannamaker
Gilbert Broughton Rogers
127 Peachtree St., Suite 605
Atlanta, GA 30303
(404) 521-9900
cwannamaker@selcga.org
grogers@selcga.org


Michael Senatore
Sierra B. Weaver
1130 17th St., N.W.
Washington, D.C. 20036
(202) 682-9400
msenatore@defenders.org
sweaver@defenders.org

Guillermo A. Montero
James D. Gette
Joanna K. Brinkman
P.O. Box 663
Washington, DC 20044
(202) 305-0443
guillermo.montero@usdoj.gov
james.gette@usdoj.gov
joanna.brinkman@usdoj.gov


Michael D. Thorp
601 D Street, Room 3112
Washington, D.C. 20004
(202) 305-0456
michael.thorp@usdoj.gov


Gary A. Moore
U.S. Attorney's Office
63 South Royal Street, Suite 600
Mobile, AL 36602
251-441-5845
251-441-5051 (fax)
gary.moore2@usdoj.gov


/s/ Brian P. McCarthy
Brian P. McCarthy  MCCAB 7434
McDowell Knight Roedder & Sledge LLC
11 North Water Street, Suite 13290 (36602)
P.O. Box 350
Mobile, Alabama 36601
Telephone: (251) 431-8806
Fax: (251) 432-5303
bmccarthy@mcdowellknight.com